UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| FRANCISCO ALVAREZ, | ) | |
| | ) | |
| Petitioner, | ) | 2:07-cv-0604-JCM-RJJ |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| BRIAN WILLIAMS, *et al.*, | ) | |
| | ) | |
| | ) | |
| Respondents. | ) | |

This action is on a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, by pro se petitioner Francisco Alvarez, a Nevada prisoner. Before the court is respondents' answer, in which they contend that several grounds are unexhausted or procedurally defaulted (docket #23) and their supplement to the answer (docket # 45). Petitioner has filed a reply (docket # 30) and a reply to the supplement (docket #46).

**I. Procedural History**

Petitioner was charged in the Eighth Judicial District Court for Clark County on October 15, 2001, with trafficking in a controlled substance (counts I, III, V, VI, VII, IX, XI, XII, and XIV ), conspiracy to sell a controlled substance (counts II, IV, VIII, X, and XIII), and possession of a controlled substance (counts XV, XVI). Exhibit F.[1] After a jury trial, petitioner was convicted of

---

[1] The exhibits cited in this order in the form "Exhibit ___," are those filed by respondents in support of their answer, and are located in the record at docket #24.

eight counts of trafficking in a controlled substance, five counts of conspiracy to sell a controlled substance, and two counts of possession of controlled substance.  Exhibits H, I, J, K, and L.  The state district court sentenced petitioner on November 26, 2001, to twenty-five years in prison with parole eligibility in ten years for the trafficking counts, to thirty-two months in prison with parole eligibility in twelve months for the conspiracy counts, and to probation, with a suspended sentence of thirty-two months in prison with parole eligibility in twelve months for the possession counts. Exhibit M.  Count VII was to run consecutively to other counts.  *Id.*  A judgment of conviction was entered on December 17, 2001.  Exhibit N.

Petitioner appealed, alleging (1) there is insufficient evidence to support the convictions, and (2) the state's impermissible vouching for witnesses constitutes reversible error. Exhibits O, P, and Q.  On February 3, 2003, the Nevada Supreme Court affirmed the judgment of conviction.  Exhibit S.

Petitioner filed a state habeas corpus petition on February 5, 2004, alleging (1) there was insufficient evidence to support the convictions; (2) the state's vouching for witnesses constituted reversible error; (3) the evidence at trial does not support the verdict; (4) the prosecutor improperly commented on credibility; (5) the state failed to produce a witness, and the use of the witness's statement deprived petitioner of a fair trial; (6) petitioner's rights to a fair trial were violated when the state destroyed evidence; (7) the state failed to preserve materially exculpatory evidence crucial to the defense; (8) mere presence evidence failed to show that petitioner exercised dominion and control over the narcotics, or that he was involved in the drug transactions; (9) petitioner was subjected to an illegal search and seizure of his home; (10) petitioner was denied his *Miranda* rights when he was arrested; (11) petitioner was deprived of a fair trial; (12) petitioner's sentence amounts to cruel and unusual punishment as he had no prior convictions; (13) petitioner was denied the effective assistance of counsel; and (14) petitioner was denied the effective assistance of appellate counsel.  Exhibits T and U.  The trial court denied the habeas petition.  Exhibit AA. Petitioner did not appeal this denial.

1  This court received a federal habeas corpus petition on May 7, 2007 (docket #1). Petitioner then filed a motion for leave to file an amended habeas petition (docket #11). The court granted the motion in part and denied the motion in part, finding grounds four, five, seven and ten of the amended petition did not relate back to the original petition (docket #19). The court dismissed those grounds and ordered an answer to the remaining grounds in the amended habeas corpus petition. *Id.*

Respondents filed an answer, and argued that all of the grounds except grounds one and two are unexhausted and all grounds but ground two are procedurally defaulted (docket #23). Petitioner filed a reply and traverse (docket #25 and #26). Before the court decided the merits of the arguments presented, petitioner moved to consolidate another habeas action with this one (docket #32 and #33). The motions were denied and the court held that various of the grounds in the amended petition were either unexhausted or procedurally barred (docket #36). The procedurally barred ground one was dismissed with prejudice and the unexhausted grounds were dismissed from the petition without prejudice. Subsequently, the matter was stayed to afford petitioner an opportunity to exhaust grounds three, six, nine, eleven, twelve, fourteen and fifteen (docket # 39).

Upon petitioner's motion to reopen the case, the court found that the only grounds remaining for consideration on the merits were grounds two, eight, and thirteen, where all other grounds had been dismissed as discussed above. The parties supplemented their briefs on the merits and the matter is ready for consideration.

**II. Discussion**

**A. Legal Standard**

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this Court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

3

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). These standards of review "reflect the ... general requirement that federal courts not disturb state court determinations unless the state court has failed to follow the law as explicated by the Supreme Court." *Davis v. Kramer*, 167 F.3d 494, 500 (9th Cir. 1999). Therefore, this court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter,* 562 U.S. ___, ___, 131 S.Ct. 770, 786 (2011).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63 (2003) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and *citing Bell v. Cone*, 535 U.S. 685, 694 (2002).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (*quoting Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (*quoting Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to federal law, this court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04

(1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).  Furthermore, "a determination of a factual issue made by a state court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

  **B.**  **Remaining Grounds**

    The remaining grounds for relief include three suggestions that there was insufficient evidence to support petitioner's conviction in violation of his rights to due process and a fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

    Ground two argues there was no physical evidence to tie petitioner to the drug sales and that the "eyewitness testimony" of the surveillance officers "variously described him, his hair, his ability to speak English, [and] his voice."  Petitioner argues that, although it appears undisputed that a man named "Pancho" and a man named "Coy" sold drugs to undercover officers a "half dozen" times, Coy's testimony that he alone dealt drugs from petitioner's apartment, where he rented a room, should overcome the testimony of the arresting officers who testified that they recognized petitioner as "Pancho" the man who participated in the various drug sales.  Petitioner argues that because there were no photographs or voice recordings of Pancho participating in the sales and no fingerprints were taken from the drugs, money or premises entered into evidence, he could not be properly convicted.

    Ground eight also alleges federal constitutional violations because there was insufficient evidence to support the conviction as required by Nevada Revised Statutes § 175.191.  Ground eight provides no facts to support the allegation.

    Ground thirteen argues the evidence of his "mere presence" is insufficient to show that he had the required dominion and control over the narcotics or that he was in any way involved in the drug transactions.  This ground argues facts similar to those presented in ground two, including the complaint that the only evidence presented was the testimony of the police officers, without confirmation by any other witnesses.

<u>Sufficiency of the Evidence</u>

As the United States Supreme Court recently confirmed, claims of insufficient evidence brought under the *Jackson v. Virginia* standard face a high bar in this court given the two layers of judicial deference required. *Coleman v. Johnson,* 132 S.Ct. 2060 (2012). The first layer of deference allows the jury and not the court, to initially determine what conclusions should be drawn from the evidence that is admitted at trial. *Id.* at 2062. On appeal, the court must defer to the jury and may overturn the verdict only if "no rational trier of fact could have agreed with the jury." *Id., citing Cavazos v. Smith,* 565 U.S. 1, ___, 132 S.Ct. 2, 4 (2011)(*per curiam*). Second, "on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *Cavazos,* 565 U.S. at ___, 132 S.Ct. at 4. Only if the state court decision was 'objectively unreasonable.' may the federal court overturn the state court's decision. *Id.* (quoting *Renico v. Lett*, 559 U.S. ——, ——, 130 S.Ct. 1855, 1862 (2010)).

Under *Jackson v. Virginia*, evidence is sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307 319, 99 S.Ct. 2781 (1979).

Petitioner was convicted of numerous counts of conspiracy to sell, trafficking in, and possession of a controlled substance. Exhibit F. The evidence presented at trial is thoroughly outlined by respondents in the answer (ECF No. 23). It includes the testimony of undercover police officers McNair, who conducted all of the undercover drug buys which resulted in the arrest and charges. She testified extensively about at least nine separate drug transactions between April 16, 2001, and May 8, 2001, involving the petitioner, either through his actual presence at the buy or through his communication with McNair over the telephone. She confidently testified that she recognized the petitioner as the drug dealer known to her as Pancho. She stated that he had been identified by her initial contact, Coy, as Coy's boss and the person who could help her when she

asked about further drug purchases. McNair told the jury that she could readily distinguish between Coy and Pancho. She testified that Coy spoke little English and tried to communicate with McNair in Spanish and Pancho had no difficulties conversing clearly in English. McNair identified Pancho as the petitioner in both photographs and in person in court. She testified that each time she placed a page to signal her desire to purchase more drugs, Pancho would call her back and discuss the price of the drugs and the location of the buy. McNair also testified extensively about her handling of the drugs including testing them to ensure they were actually cocaine and in impounding them for safe keeping. McNair identified a Nissan 300 ZX driven by Pancho for at least two of the buys. McNair testified about her interactions with Pancho in her attempts to determine where he lived, including a request on one occasion that he sell her another ounce of cocaine right away, to which he responded "no problem" and advised her to wait for his return. This interaction took place while McNair was parked very near the Ivy Apartments. Pancho left the vehicle on foot and returned with another ounce of cocaine within 20 to 25 minutes. McNair testified that on several occasions, Pancho was seated in her vehicle only a couple of feet away from her, that she got a good look at him on several occasions, and that she had no doubt that Pancho was actually petitioner, Francisco Alvarez. *See generally*, Exhibits H and I.[2]

McNair testified that on May 8, 2001, she arranged with Pancho to buy six ounces of cocaine and when the drugs were delivered to the pre-arranged location by Coy, she signaled to her surveillance team and they moved in and effected Coy's arrest at the scene. Pancho and a third co-defendant were arrested by other surveillance officers at a different location and the officers moved to execute a search warrant on the Ivy Apartment residence that the officers had observed to be Coy's and Pancho's residence. In the course of that search, McNair testified, the officers located significant quantities of drugs including cocaine, methamphetamine and marijuana, along with scales a B3 vitamin compound often used to cut or dilute cocaine and paperwork. These items were found

---

[2] Precise citation to the trial transcript are found in respondents' answer and have not been repeated here for purposes of brevity.

7

1  in a Mickey Mouse backpack located in one bedroom of the two bedroom apartment. She testified
2  that $3895 was also found in the second bedroom of the apartment, including $1150 of the marked
3  buy money McNair had given to Pancho or Coy for the cocaine she had purchased.  Exhibit I.

4        Detective Landaker, a member of the undercover team also testified.  He was present
5  on surveillance during all of the drug buys and told the jury that the team had observed Coy to have
6  come from the Ivy Apartment residence during at least one of the drug buys.  Landaker also testified
7  he observed the petitioner exit a Nissan 300ZX during the drug transaction on April 17, 2001, and he
8  heard Pancho provide McNair with the pager ordering code she used to let Pancho know she wanted
9  to buy more drugs. As with McNair, Landaker testified that he had "no doubt" that Pancho and
10 petitioner were the same person.  He further testified that following a later drug buy, both Pancho
11 and Coy were observed entering the Ivy Apartments together.  Landaker testified that during the final
12 drug buy, he observed Pancho and Coy enter a red truck being driven by the third co-defendant and
13 that this vehicle was followed to the park where McNair was waiting for the cocaine to be delivered.
14 Landaker observed Coy exit the red truck.  Once the bust was signaled and the suspects were taken
15 into custody, a search of the vehicle uncovered 37.3 grams of methamphetamine.  *See generally,*
16 Exhibit I.

17       The prosecution's case also included testimony from a drug expert who confirmed
18 that the substances sold by Coy and Pancho to McNair were, in fact, controlled substances and
19 illegal drugs. Exhibit I, pp. 163-185.  Finally, a detective Klein, also part of the surveillance team,
20 testified that he had personally observed the petitioner and Coy leaving the Ivy Apartment residence
21 immediately prior to their meeting with McNair on May 2, 2001, for a drug buy and returning there
22 afterward.  Exhibit I, pp. 189-200.

23       Petitioner's trial defense included testimony from Coy, whose true name is Jose
24 Pineda-Silva. Coy, who was twenty-one years old at trial, testified he didn't know the petitioner well,
25 and that he only rented a room from him.  *See generally,* Exhibit J.  Coy testified that he had
26 conducted the drug transactions on his own, receiving the beeper message and returning the call on a

public pay phone and that he walked to the location for the drug buy on each occasion except the last.  For that transaction, Coy testified, he took the petitioner's car, "without his consent" and went to do the transaction. Exhibit J, p. 26.  Coy testified that the petitioner had had nothing to do with the sales of the drugs.  Coy admitted that he had been arrested and had pled guilty to three felonies of trafficking in a controlled substance prior to his testimony.  Exhibit J.  Coy testified that he used a nylon bag to keep the drugs and money in, that he didn't know how many bedrooms the apartment actually had, or the name of the woman and two children who lived in the apartment with Pancho. *Id.*  Thereafter, the defense rested, the jury was instructed and deliberated, returning a guilty verdict on all counts.  Exhibits K and L.

As the above summary demonstrates, even in the absence of physical evidence such as fingerprints or photos relating petitioner to the crime, the testimony of the state's witnesses was strong enough and the testimony of Coy was so incredible that any reasonable juror would have found sufficient evidence to convict petitioner on the charges.  The state's witnesses were unequivocal in their recognition and identification of petitioner as Pancho the major player in the drug deals.  The fact that more than one witness told the same story and offered the same identification supports the verdict.

The Nevada Supreme Court's determination of this claim was not unreasonable either in its application of federal law or in its factual determinations. Exhibit S.  The case of *Wilkins v. State,* 6 Nev. 367, 609 P.2d 309 (1980), cited in the order of affirmance recognizes and applies the *Jackson v. Virginia* standard.  The Nevada Supreme Court also found the undercover officer's (McNair) testimony was credible, particularly when it was corroborated by two other witnesses and that the jury could have easily inferred from that evidence that petitioner had conspired to sell, was in possession of and had trafficked in controlled substances.  *Id.,* p. 2-3.

**III.    Conclusion**

Applying the double deference required of this Court under *Coleman v. Johnson,* 132 S.Ct. 2060, the jury's verdict was reasonable and cannot be overturned and the Nevada Supreme

Court's decision to uphold the verdict was not objectively unreasonable.  Petitioner is not entitled to relief on the claims of insufficient evidence raised in his petition under 28 U.S.C. § 2254(d).

Should petitioner wish to appeal this decision, he must receive a certificate of appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability.  *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.* (*quoting Slack*, 529 U.S. at 484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further.  *Id.*

Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed.  Rule 11(a).  This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard.  The Court will therefore deny petitioner a certificate of appealability.

**IT IS THEREFORE ORDERED** that the petition for writ of habeas corpus (ECF No. 12) is **DENIED.**  No certificate of appealability is warranted.

**IT IS FURTHER ORDERED** that the clerk shall enter judgment accordingly.

Dated, September 20, 2012.

_____
UNITED STATES DISTRICT JUDGE